# FEBRUARY, 1934

CITY OF DAYTON ET AL. V. JAMES V. ALLRED, ATTORNEY GENERAL.

No. 6650. Decided February 7, 1934.
(68 S. W., 2d Series, 172.)

*John D. McCall* and *W. P. Dumas*, both of Dallas, for relators.

Articles 1111 et seq., R. S., 1925, as amended by Acts, 1933, Reg. Ses., p. 269, do not violate sections 5 and 7 of Article 11 of the Constitution of Texas, or any other section or provision of the Constitution, and it cannot be successfully maintained that any part of the obligation created by the City of Dayton can be classed as a "debt" within the meaning of said article and sections. City of Corpus Christi v. Woessner, 58 Texas, 467; City of Laredo v. Frishmuth, 196 S. W., 190; McNeal v. City of Waco, 89 Texas, 83, 33 S. W., 322; Sowell v. Griffith, 294 S. W., 521; City of Wichita Falls v. Williams, 119 Texas, 163, 26 S. W. (2d) 910.

If no levy is required; if the property within the corporate limits are not to be burdened through future years with taxes; if the faith, credit and commercial standing of the community (as a body politic and corporate) are not pledged for the payment of the obligation, then no debt has been created by the

*municipal government* and there has been no violation of the Constitution.

Purchase money, as used in Article 1112, R. S., 1925, are broad enough to include the *acquisition* of a utility system or plant by either construction of a new system, or purchase of an existing one. Chicago & E. L. R. R. Co. v. Doyle, 256 Ill., 514; United States v. Whipple Hardware Company, 191 Fed., 945; United States v. Beaty, 198 Fed., 284.

The governing body of a city has the power and authority to devote the net income of any public utility to the payment of any obligation of the City, or to the payment of any obligation of any other public utility owned, controlled and operated by such city. Coleman v. Town of Eutaw, 157 Ala., 327, 47 So., 703; Cary v. Blodgett, 10 Cal. App., 463, 102 Pac., 668; Aransas County v. Coleman-Fulton Pasture Co., 108 Texas, 216, 191 S. W., 553; Berlin Iron-Bridge Co. v. City of San Antonio, 50 S. W., 408.

*James V. Allred,* Attorney General, and *Pat Dougherty,* Assistant Attorney General, for respondent.

That the proposed sewer system revenue bonds constitute a debt of the City of Dayton under sections 5 and 7 of Article 11 of the State Constitution, and under the statutes attempting to authorize such bonds no provision has been or can be made for the levy of a tax to pay them, as required by the Constitution. City of Fort Worth v. Bobbitt, 121 Texas, 14, 41 S. W. (2d) 228; McNeal v. City of Waco, 89 Texas, 83, 33 S. W., 322; City of Corpus Christi v. Woessner, 58 Texas, 467; Andrus v. Crystal City, 265 S. W., 550.

The bonds, in excess of the amount allowed by statute, except for purchase money, are not being issued for the purpose of acquiring an existing plant or system, or to refund an existing indebtedness lawfully created, an election authorizing their issuance is required by the pertinent statute. (Art. 1112.) Simpson v. City of Nacogdoches, 152 S. W., 858; United States v. Beaty, 198 Fed., 284.

A city is without power to encumber part of the income and revenue of one public utility system for the use and benefit of another; hence the attempted pledge of a part of the income and revenue of the water system to pay, or to aid in the payment of, the principal and interest of the proposed sewer system bonds is not permitted by the statute. City of Raymondville v. McCann, 54 S. W. (2d) 1049.

*Scarborough & Ely, Henry L. DeBusk,* and *Wagstaff, Har-*

*well, Wagstaff & Douthit,* all of Abilene, filed briefs as amicus curiae.

MR. JUDGE CRITZ delivered the opinion of the Commission, Section A.

This is an original mandamus proceeding instituted by the City of Dayton et al., hereinafter called Relators, against the Honorable James V. Allred, Attorney General of Texas, hereinafter called Respondent, to compel his approval of certain bonds of such city in the sum of $22,500.00 designated as "CITY OF DAYTON SEWER SYSTEM REVENUE BONDS." All fact questions are admitted; only law questions being involved.

It appears from this record that on January 4, 1934, the City Council of the City of Dayton, Texas, passed an ordinance authorizing the borrowing by such city of the sum of $22,-500.00 to be used for the purpose of constructing a complete new sanitary sewer system in and for the city. In order to bororw the above sum the ordinance provides for the issuance of thirty bonds, numbered consecutively from one to thirty, both inclusive, in the denomination of $750.00 each, bearing four per cent interest, payable semi-annually, and the principal maturing in numerical order, one bond each year beginning February 1, 1935, and ending February 1, 1964.

In order to secure the payment of the above bonds with interest, the ordinance provides that the holder thereof shall have a mortgage and an encumbrance on such sewer system when completed, together with the franchise, and income thereof, and everything pertaining thereto, acquired or to be acquired. In addition to the security just mentioned, the ordinance also pledges or mortgages the sum of $83.33 per month out of the net revenues of the City of Dayton's water works system for the 360 months during which the bonds run.

As we understand this record the City of Dayton is a municipal corporation, duly organized under the laws of the State of Texas, with a population of less than 160,000. It now owns its own water works plant, and no lien has ever been placed thereon, or on any of its revenues. The city does not own a sewer system. The money borrowed from these bonds will not be used to purchase a system already built, but to defray the cost of building an entirely new sewer system.

Also we understand from this record that none of the propositions involved in the ordinance under consideration have been submitted to a vote of the qualified voters of the city.

When the bonds provided by the above ordinance were presented to the Attorney General, together with the record per-

taining thereto, he declined to approve the same, and gave his reasons for such refusal, as follows:

"(a) That the proposed bonds constitute a debt of the City of Dayton within the provisions of Sections 5 and 7 of Article 11 of the Constitution of Texas, and that under the Statute attempting to authorize such bonds, no provision has been or can be made for the levy of a tax to pay them, as required by said Sections 5 and 7 of Article 11 of the Constitution.

"(b) That the pertinent Statute, as originally enacted in 1911, and each and every amendment thereto, is without force and effect, because it is an attempt on the part of the Legislature to do indirectly that which the Constitution declares can not be done, i.e., to create a debt on the faith and credit of a city or town without first making provision to pay such debt by the levy of a direct ad valorem tax on all taxable property therein; hence, said Article 1111 et seq., as amended by said Chapter 122, Acts of 1933, are violative of the provisions of Sections 5 and 7 of Article 11 of the Constitution.

"(c) That under Article 1112, as amended, and if a valid enactment, a City cannot make any such loan as here attempted without an election; that the proposed bonds would aggregate the sum of Twenty Two Thousand Five Hundred ($22,500.00) Dollars, and are to be issued for the purpose of 'construction of a complete new sanitary sewer system in and for said city,' and, if issued, payment thereof will be secured by a first mortgage on the entire sewer system of the City; whereas, the Statute (Article 1112, as amended) expressly provides that no such system shall be encumbered for more than Five Thousand ($5,000.00) Dollars, 'except for purchase money, or to refund any existing indebtedness lawfully created,' until authorized by a majority vote of the qualified voters of the city or town, which election shall be held and notice thereof given as is provided in the case of the issuance of municipal bonds by such cities or towns. Therefore, as the bonds are not being issued for the purpose of acquiring an existing plant or system, or to refund an existing indebtedness lawfully created, an election authorizing their issuance is required by the pertinent statute.

"(d) The Indenture or mortgage, executed to secure payment of the proposed bonds, contains the following stipulations, to-wit:

"Also, the net revenues of the present water works system owned, controlled and operated by said City, to the amount of THIRTY THOUSAND DOLLARS ($30,000.00), or so much thereof which, together with the net income and revenues of the sani-

tary sewer system, will be sufficient to promptly pay both principal of and interest on said bonds, when and as the same shall become due, and which said sum of THIRTY THOUSAND DOLLARS ($30,000.00), or so much thereof as shall be necessary to supplement the net income and revenues of the sewer system, for the purpose stated, has been appropriated by ordinance of the City Council of said City adopted on the —— day of December, 1933, authorizing the issuance of the aforesaid bonds, and the amounts so appropriated shall be paid into the "SPECIAL SEWER SYSTEM REVENUE BOND FUND?" in three hundred sixty (360) monthly installments, and beginning the 30th day of January, 1934, the sum of EIGHTY-THREE DOLLARS AND THIRTY-THREE CENTS ($83.33), or so much thereof as shall be necessary to supplement the net income and revenues of the sewer system, for the purpose stated, shall be deposited in said bond fund, and such amounts as shall be necessary for said purpose shall be deposited in said Fund on or before the First Day of each month for and during said period of three hundred sixty (360) months, and a lien is hereby created on said net revenues of the said waterworks system for said purpose; provided, however, that no lien or mortgage shall attach to any part of said waterworks system, or its revenues other than a sufficient amount of the net revenues which, together with the net revenues of the sewer system, will be sufficient each month to meet the semi-annual interest and principal payments on said bonds; and it is expressly agreed and understood that whenever the monthly net income and revenues of the sewer system shall be sufficient to pay in full the amount needed in such month for interest and sinking fund on said bonds, it shall not be necessary to transfer any money from the waterworks system in and for that particular month.

"The bond ordinance contains a provision similar in scope and purpose. Therefore, it is the opinion of the Attorney General that the governing body of this city is without power and authority to pledge, mortgage or encumber any part of the income and revenue of one public utility system for the use and benefit of another public utility system; hence, the attempted pledge of a part of the income and revenue of the water system to pay, or to aid in payment of, the principal and interest of the proposed sewer system bonds is not permitted by the Statute.

"(e) That the pertinent Statute is without force and effect because it attempts to authorize cities and towns to mortgage and encumber their light, water, sewer and other utility sys-

tems; whereas, it is expressly declared in Section 9, of Article 11 of the Constitution of Texas, that—

" 'The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor. Fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, provided, nothing herein shall prevent the enforcement of the vendors lien, the mechanics or builders lien, or other liens now existing.'

The indenture or mortgage executed by the governing body of the city of Dayton makes provision for sale of the properties of the sewer system in event of default in payment of principal and interest of the proposed bonds.

"(f) That if it were legal or permissible for the governing body of a city to pledge the net income and revenue of one utility system for the use and benefit of another utility system, owned and operated by said city or town, the attempt here to pledge and encumber the net income and revenue of the water system throughout a period of thirty years, and in the maximum sum of Thirty Thousand Dollars ($30,000.00), was and is in violation of said Article 1112, as amended, in that, it attempts to mortgage and encumber the water system in excess of Five Thousand ($5,000.00) without first submitting the proposition or question to a vote of the qualified voters of such city.

"(g) That if it were legal or permissible for the governing body of this City to issue the proposed bonds without first obtaining authority therefor from the qualified electors, at an election held for the purpose, the proceedings of such governing body attempting to authorize such bonds still do not conform to the requirements of the statute, because Section 11, of Chapter 163, Acts 1931, (the Bond and Warrant Law) requires notice of intention of a governing body to pass an ordinance for the issuance of public utility revenue bonds of a city or town; and as no notice of intention to pass the ordinance authorizing the $22,500.00 City of Dayton sewer revenue bonds was ever issued and given, the qualified voters were denied the right to petition for a referendum election on the proposition to issue said bonds."

We shall now proceed to decide and determine the various law questions raised by Respondent, but before doing so we deem it expedient to here quote the several statutes under which Relators purport to set in issuing these bonds. Such statutes are as follows:

Art. 1111: "All cities and towns including Home Rule Cities operating under this title shall have power to build and purchase, to mortgage and encumber their light systems, water systems, sewer systems, or sanitary disposal equipment and appliances, or natural gas systems, parks and/or swimming pools, either, or all, and the franchise and income thereof and everything pertaining thereto acquired or to be acquired and to evidence the obligation therefor by the issuance of bonds, notes or warrants, and to secure the payment of funds to purchase same; or to purchase additional water powers, riparian rights, or to build, improve, enlarge, extend or repair such systems, or any one of them, including the purchase of equipment and appliances for the sanitary disposal of excreta and offal, and as additional security therefor, by the terms of such encumbrance, may grant to the purchaser under sale or foreclosure thereunder, a franchise to operate the systems and properties so purchased for a term of not over twenty (20) years after purchase, subject to all laws regulating same then in force. No such obligation of any such systems shall ever be a debt of such city or town, but solely a charge upon the properties of the system so encumbered, and shall never be reckoned in determining the power of any such city or town to issue any bonds for any purpose authorized by law. (As amended Acts 1927, 40th Leg., p. 276, ch. 194; Acts 1932, 42nd Leg., 3rd C. S., p. 96, ch. 32; Acts 1933, 43rd Leg., p. 320, ch. 122.)"

Art. 1112. "No such light, water, sewer, or natural gas systems, parks and/or swimming pools, shall ever be sold until such sale is authorized by a majority vote of the qualified voters of such city or town; nor shall same be encumbered for more than Five Thousand ($5,000.00) Dollars, except for purchase money, or to refund any existing indebtedness lawfully created, until authorized in like manner. Such vote in either case shall be ascertained at an election, which election shall be held and notice thereof given as is provided in the case of the issuance of municipal bonds by such cities and towns. (As amended Acts 1927, 40th Leg., p. 276, ch. 194; Acts 1932, 42nd Leg., 3rd C. S., p. 96, ch. 32; Acts 1933, 43rd Leg., p. 320, ch. 122.)"

Art. 1113. "Whenever the income of any light, water, sewer, or natural gas systems, parks and/or swimming pools, shall be encumbered under this law, the expense of operation and maintenance, including all salaries, labor, materials, interest, repairs and extensions necessary to render efficient service and every proper item of expense shall always be a first lien and charge against such incomes. Provided, that only such repairs and extensions, as in the judgment of the govern-

ing body of such city or town, are necessary to keep the plant or utility in operation and render adequate service to such city or town and the inhabitants thereof, or such as might be necessary to meet some physical accident or condition which would otherwise impair the original securities, shall be a lien prior to any existing lien. The rates charged for services furnished by any such system shall be equal and uniform, and no free service shall be allowed except for city public schools or buildings and institutions operated by such city or town. There shall be charged and collected for such services a sufficient rate to pay all operating, mainitenance, depreciation, replacement, betterment and interest charged, and for interest and sinking fund sufficient to pay any bonds issued to purchase, construct or improve any such systems or any outstanding indebtedness against same. No part of the income of any such system shall ever be used to pay any other debt, expense or obligation of such city or town, until the indebtedness so secured shall have been finally paid.

"It shall be the duty of the Mayor of such city or town to install and maintain, or cause to be installed and maintained, a complete system of records and accounts showing the free service rendered, and the value thereof, and showing separately the amounts expended and/or set aside for operation, salaries, labor, materials, repairs, maintenance, depreciation, replacements, extensions, interest, and the creation of a sinking fund to pay off such bonds and indebtedness.

"It shall likewise be the duty of the superintendent or manager of such plant to file with the Mayor of such city or town, not later than February first, a detailed report of the operations of such plant for the year ending January first precedin, showing the total sums of money collected and the balance due, as well as the total disbursements made and the amounts remaining unpaid as the result of operation of such plant during such calendar year.

"Failure or refusal on the part of the Mayor to install and maintain, or cause to be installed and maintained, such system of records and accounts within ninety (90) days after the completion of such plant, or on the part of such superintendent or manager, to file or cause to be filed such report, shall constitute a misdemeanor and, on conviction thereof, such Mayor or Sup-erintendent or Manager shall be subjected to a fine of not less than One Hundred ($100.00) Dollars, nor more than One Thousand ($1,000.00) Dollars; and any taxpayer or holder of such indebtedness residing within such city or town shall have the right, by appropriate civil action in the District Court of

the County in which such city or town is located, to enforce the provisions of this Act as amended. (As amended Acts 1927, 40th Leg., p. 276, ch. 194; Acts 1932, 42nd Leg., 3rd C. S., p. 96, ch. 32; Acts 1933, 43rd Leg., p. 320, ch. 122.)"

Art. 1114. "Every contract, bond, note or other evidence of indebtedness issued or included under this law shall contain this clause: 'The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation.' Where bonds are issuer hereunder, they may be presented to the Attorney General for his approval as is provided for the approval of municipal bonds issued by such cities or towns. In such case, the bonds shall be registered by the State Comptroller as in the case of other municipal bonds. (As amended Acts 1933, 43rd Leg., p. 320, ch. 122.)"

Art. 1114a. "Projects financed in accordance with this law are hereby declared to be self-liquidating in character and supported by charges other than by taxation." (Acts 1933, 43rd Leg., p. 320, ch. 122.)"

Art. 1114b. "All laws and part thereof, in conflict herewith, are hereby repealed to the extent of the conflict, and this law shall take precedence over all conflicting city charter provisions. (Acts 1933, 43rd Leg., p. 320, ch. 122.)"

Art. 1114c. "The actions of all cities and towns and of all officials in passing ordinances, adopting resolutions, executing securities and delivering securities to accomplish the objects permitted under this Act are hereby expressly authorized and validated in like manner as if this law had been effective at the time of such actions, subject to the provisions of Section 5. (Acts 1933, 43rd Leg., p. 320, ch. 122.)"

Art. 1115. "The management and control of any such system or systems during the time they are encumbered, may by the terms of such encumbrance, be placed in the hands of the city council of such town, or may be placed in the hands of a board of trustees to be named in such encumbrance, consisting of not more than five members, one of whom shall be the Mayor of such city or town. The compensation of such trustees shall be fixed by such contract, but shall never exceed five per cent of the gross receipts of such systems in any one year. The terms of office of such board of trustees, their powers and duties, the manner of exercising same, the election of their successors, and all matters pertaining to their organization and duties may be specified in such contract of encumbrance. In all matters where such contract is silent, the laws and rules

governing the council of such city or town shall govern said board of trustees as far as applicable."

Art. 1116. "The City council or board of trustees having such management and control shall have the power to make rules and regulations governing the furnishing of service to patrons and for the payment of the same, and providing for the discontinuance of such service failing to pay therefor when due until payment is made. The city council shall have power to provide penalties for the violation of such rules and regulations and for the use of such service without the consent or knowledge of the authorities in charge thereof, and to provide penalties for all interference, trespassing or injury to any such systems, appliances or premises on which same may be located."

Art. 1117. "A contract of encumbrance may provide for the selection of a trustee to make sale upon default in the payment of the principal or interest according to the terms of such contract, and for the selection of his successor if disqualified or failing to act, and for collection fees not exceeding five per cent of the principal."

Art. 1118. "No collection fees shall accrue, and no foreclosure proceedings shall be begun in any court or through any trustee, and no option to mature any part of such obligation because of default in payment of any installment of principal or interest shall be exercised until ninety days written notice shall be given to each member of the city council of such city or town and to each member of such board of trustees, if any, that payment has been demanded and default made, which notice shall date from the sending of a prepaid registered letter to each person to be notified, addressed to them at the post office in such city or town. If the installments of principal and interest then due shall be paid before the expiration of said ninety days together with the interest prescribed in such contract, not exceeding ten per cent per annum, from the date of default until the date of payment, it shall have like effect as if paid on the date the same was originally due."

It will be noted that Articles 1111 to 1114c, inclusive, are contained in the 1933 pocket supplement to Vernon's Annotated Revised Civil Statutes of Texas, while Articles 1115 to 1118, inclusive, are contained in Vernon's R. C. S., 1925.

By appropriate objections above, Respondent contends that these bonds are attempted to be issued in violation of Sections 5 and 7 of Article XI of our State Constitution.

The Articles in question read as follows:

Sec. 5. "Cities having more than five thousand (5000) in-

habitants may, by majority vote of the qualified voters of said city, at an election held for that purpose adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter, shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State, said cities may levy, assess and collect such taxes as may be authorized by law or by their charters; but no tax for any purpose shall ever be lawful for any one year, which shall exceed two and one-half per cent of the taxable property of such city, and no debt shall ever be created by one city, unless at the same time provisions be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent thereof; and provided further, that no city charter shall be altered, amended or repealed oftener than every two years. (Sec. 5, Art. 11, adopted election November 5, 1912; proclamation December 30, 1912.)"

Sec. 7. "All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized upon a vote of two-thirds of the taxpayers therein (to be ascertained as may be provided by law) to levy and collect such tax for construction of sea walls, breakwaters, or sanitary purposes as may be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for."

■ The contention that these bonds violate the above constitutional provisions is based on the theory that a debt against the City running for a number of years is created with no tax levy provided to pay the same. We think this objection should be overruled. These bonds are secured only by the proposed sewer system, and its franchise, and the fund to be derived from the revenues from such system, and the revenues of the water system. The ordinance and the proposed bonds expressly provide that such bonds shall never be a claim against the tax funds of the City. Also the statutes authorizing such bonds make the same express provision. In other words the holder of these bonds merely has a claim against the sewer system, its franchise, and the revenues of such system, and the water sys-

tem. He can never have any claim against tax funds. It is settled that such an obligation does not some within the term debt as used in the above quoted constitutional provision. City of Fort Worth v. Bobbitt, 121 Texas, 14, 36 S. W. (2d) 473; Id., 41 S. W. (2d) 228; City of Laredo v. Frishmuth (Civ. App.), 196 S. W., 190; McNeal v. City of Waco, 89 Texas, 83, 33 S. W., 322; Sowell v. Griffith (Com. App.), 294 S. W., 521. At this point we again refer to the fact that the statutes under which these bonds are proposed to be issued completely guard against them ever becoming obligations against the tax funds of the City. Article 1114, Vernon's Annotated R. C. S., 1933 Supplement, supra.

■ By appropriate objections Respondent contends that this proposed bond issue is void because the City is without power to incure the obligations proposed against its utility systems without first being authorized to do so by a majority vote of its qualified voters. This contention is based on the provisions of Article 1112, supra.

A careful reading of Article 1111, supra, shows that it authorizes cities and towns to mortgage and encumber, among other things, their water works systems and sewer systems, and the franchise and income thereof to secure funds to purchase same, etc. This article grants the power, and says nothing about an election being required as a condition precedent to its exercise. If the powers granted by Article 1111 are limited in the respect under discussion the limitation must be found in Article 1112. The article granting the power specifically states that the power is given to mortgage and encumber the system itself, together with the franchise and the income. The article which limits this power specifically says that the system itself shall not be sold without a majority vote of the qualified voters. It is then further specifically provided that such system shall not be *encumbered* for more than $5,000.00, except for purchase money, etc., without such vote.

In the instant case the City of Dayton has no sewer system and expects to use the money derived from the sale of these bonds in the construction, acquisition and completion of such a system. It is our opinion that such a record justifies the conclusion that, in so far as the proposed sewer system here involved is concerned, the mortgage thereon is for purchase money within the meaning of Article 1112. While it is for more than $5,000.00, being for purchase money, it is not required by this statute that a vote be had.

■ We now come to consider the validity of that part of the

ordinance and proposed bonds to be issued thereunder which attempt to mortgage or encumber the income of the water works plant already owned by the City of Dayton. As we understand this record there is no outstanding mortgage against the water works system or its franchise or income.

It will be noted that Article 1112 in effect specifically prohibits the *encumbrance* of the municipal plants therein mentioned for more than $5,000.00, except for purchase money or to refund any existing indebtedness, etc., until such *encumbrance* is authorized by a majority vote of the qualified voters. It appears that this ordinance, and these proposed bonds directly create a lien or *encumbrance* on the income of the water works system for more than $5,000.00. If this amounts to an *encumbrance* of the system itself within the meaning of the above statute, it is certainly prohibited thereby.

As we understand their briefs and argument Relators contend that since the statutes granting the power and authority to mortgage include the plant itself, together with the franchise and income, and since the statute requiring a vote only mentions the system itself, and does not mention income, the requirement for a vote does not include income. We cannot so construe this statute.

As already shown the present ordinance, contract and bonds attempt directly to give a lien and deed of trust on the income of the City's water works plant for more than $5,000.00. If this amounts in law to an *encumbrance* on the plant itself, within the meaning of the prohibitory statutes cited, the ordinance and proposed bonds are illegal, and this mandamus should be refused.

Webster's New International Dictionary defines the word encumbrance when used as a law term as follows:

"Law. A burden or charge upon property; a claim or lien upon an estate, which may diminish its value; specif., any interest or right in land existing to the diminution of the value of the fee, but not preventing the passing of the fee by conveyance."

In 20 C. J., p. 1250, the word is thus defined:

"In a legal sense. The word has now a fixed and definite meaning, although it is not one of the terms of the law, and no definition of it will be found in the older books. The word has been defined to be anything that impairs the use or transfer of property; anything which constitutes a burden on the title; a burden or charge upon property; every burden on an estate, or clog on the title, such as a term for years, or grant by copy

of court roll; a burden on land, depreciative of its value, such as a lien, easement, or servitude, which, although adverse, to the interest of the landowner, does not conflict with his conveyance of the land in fee; a claim or lien upon property; a claim, lien, or liability, attached to property; a legal claim or lien upon an estate, which may diminish its value; a condition which may work a forfeiture of a estate; a legal claim on an estate for the discharge of which the estate is liable; an embarrassment of an estate or property so that it cannot de disposed of without being subject to it; an estate, interest, or right in lands, diminishing their value to the general owner; a liability resting upon an estate; a lien or charge upon land which binds it for the payment of a debt; any adverse right or privilege which curtails the full and exclusive enjoyment of the land; a paramount right in, or weight upon, land which may lessen its value; a right to an easement of any kind; a weight on the land, which must lessen the value of it. As applied to an estate in land, it may fairly include whatever charges, burdens, obstructs, or impairs its use, or prevents or impedes its transfer. Encumbrances may be created by contract, or may be acquired in pursuance of some statute. They are of two kinds. (1) That which affects the title: (2) that which affects only the physical condition of the property. A mortgage or other lien is a fair illustration of the former; a public road or a right of way of the latter. Where encumbrances of the former class exist, a convenant referred to under all the authorities, is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title. Such encumbrances are usually of a temporary character and capable of removal. Where, however, there is a servitude imposed upon the land which is visible to the eye, and which affects any title, but the physical condition of the property, a different rule prevails."

The above definitions have received the approval of the courts of last resort throughout this country. In support of this proposition we refer to the numerous annotations contained in 20 C. J. supra. Also we refer to the various definitions contained under the term *incumbrance,* in the several editions of Words and Phrases.

It has been held that the term *encumbrance,* is more comprehensive than the term lien. It includes liens, and any other burden resting on the property itself, or on its title, which tends to lessen its value, or interfere with its free enjoyment. First Church of Christ, etc., v. Cox, 47 Ind. App., 536, 94 N. E., 1048.

A mortgage on the income of a water works plant for thirty years would not prevent the passing of the fee by conveyance, but it would certainly constitute a burden or charge on the property which would diminish its value, and interfere with its free enjoyment. Such a mortgage is therefore an encumbrance on the plant.

From the above it is evident that we hold that the attempt on the part of the City to mortgage the income of its water works swstem for more than $5,000.00 is an encumbrance on the system, and the proposition not having been submitted to a vote, and the bonds not having been issued for purchase money thereof, or to refund an existing indebtedness lawfully created thereon, is in violation of Article 1112.

■ Respondent contends that these bonds are void because the statutes under which they are attempted to be issued are in contravention of Section 9 of Article XI of our State Constitution in so far as such statutes attempt to authorize the giving of liens on public utilities. This constitutional provision reads as follows:

Sec. 9. "The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor. Fire Engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, provided, nothing herein shall prevent the enforcement of the vendors lien, the mechanics or builders lien, or other liens now existing."

The contract or deed of trust under consideration here contains appropriate provisions authorizing sale by trustee. The ordinance authorizes such provisions. The pertinent statute, Article 1117, supra, specifically provides for sales by trustees.

It is settled in this State that sales made by trustees under voluntary deeds of trust, or mortgages duly authorized by law, with express power of sale are not forced sales. Sampson & Keene v. Williamson, 6 Texas 102; Roots v. Robertson, 93 Texas, 365, 55 S. W., 308; Jordan v. Peak, 38 Texas, 429; Weiner v. Zweib, 105 Texas, 262, 141 S. W., 771. Under these authorities we overrule this objection.

■ Respondent contends that the statutes under consideration do not contemplate the mortgaging or encumbering of one utility system, or its franchise or income, to secure funds to build, extend or improve another utility system. A careful reading of article 1111, supra, convinces us that it should not be given

76

such a restricted or narrow construction. In this connection it will be noted that, after naming each of the systems authorized to be mortgaged and encumbered, with the franchise and income, the statute then uses the phrase, "either or all." Then follows language that clearly contemplates that one or all of the utility systems named in the statute can be mortgaged for the purpose named therein.

■ ·By his last objection Respondent contends that the bonds proposed to be issued under this ordinance are illegal because the city did not comply with the pertinent provisions of Chap. 163, Act 1931, (Bond and Warrant Law of 1931), by giving notice of intention to issue before the passage of such ordinance. We understand this contention is based on Section 11 of the Bond and Warrant Law of 1931. That statute reads as follows:

Sec. 11. "Nothing herein shall be so construed as to preclude any city or town in this State, whether organized under General or Special Law or operating under Special Charter, from encumbering or mortgaging its light system, water system, sewer system or any other utility, either, both or all, and the franchise and the income thereof and everything pertaining thereto acquired or to be acquired, to secure the payment of funds to purchase same or to make or purchase extensions, additions, or improvements thereto, as contemplated in Articles 1111 to 1118, both inclusive, of the Revised Civil Statutes of Texas, 1925, with amendments thereto, or by valid provisions of the charter of such city or town, or by the provisions of Article 1175, Revised Civil Statutes of Texas, 1925, provided that in making such contracts or agreements or encumbrances and in issuing revenue bonds, warrants or other obligations to be paid out of the property and income from such system or systems, the governing body of such city or town shall comply with  the provisions of this Act in regard to notice and competitive bids and the right to a referendum of such question.

"Provided, however, that no competitive bids shall be required in case the municipality proposes to acquire an existing utility plant, and in such cases the voters shall be entitled to a referendum, only on the question of whether or not the utility shall be purchased, in the manner and under the conditions set forth in this Act.

"Provided, further, that notwithstanding any provisions of this Act, and notwithstanding any provision of its Special Charter, if such city or town is acting under authority of House Bill No. 981, passed by the Regular Session of the 42nd Legis-

lature, the requirements of this Act in reference to notice, competitive bids and the rights to referendum shall not apply until after June 1, 1932."

It will be noted that the above statute stipulates *"provided that in making such contracts or agreements or encumbrances and in issuing revenue bonds, warrants, or other obligations to be paid out of the property and the income from such system or systems, the governing body of such city shall comply with the provisions of this Act in regard to notice and competitive bids and the right to a referendum of such question.* Such language is plain and unambiguous and leaves no room for construction. Certainly the plain language of Section 11 makes it necessary to obey the provisions of Chapter 163 of the 1931 Act *"in issuing revenue bonds"* under *"articles 1111 to 1118 both inclusive."*

In conclusion it will be noted that we have not discussed or construed Article 1118a, Vernon's 1933 Supplement. This is because, as we understand this record, the City of Dayton is claiming no rights thereunder in this proceeding, and further because, as we further understand this record, such statute has no application to this proceeding.

We recommend that the mandamus prayed for by Realtors be refused.

The opinion of the Commission of Appeals is adopted, and the mandamus refused.

C. M. CURETON, Chief Justice.