CITY OF WACO V. WILLIAM MCCRAW, ATTORNEY GENERAL.

No. 7073.   Decided April 22, 1936.
(93 S. W., 2d Series, 717.)

*Richey, Sheehy & Teeling,* of Waco, for relator.

The City of Waco having, according to the agreed statement of facts, assumed control of its schools under authority of Article 2768 authorizing it to acquire exclusive control of them as an independent school district, has the full power and authority to issue its revenue bonds for a project which is to be used principally by the schools and also by the city for civic purposes. City of Rockdale v. Cureton, 229 S. W., 852; Poteet v. Bridges, 248 S. W., 415; City of Athens v. Moody, 280 S. W., 514.

A reference in the bond ordinance to certain articles of the statute which, by their own terms, have expired or which are not pertinent, as the source of the power by which the ordinance is passed, will not invalidate the ordinance nor the bonds, if the power to exact the ordinance exists under another statute. Derrick v. January, 94 U. S., 202, 24 L. Ed., 110; State v. Several Parcels of Land, 103 S. W., 810; Bellerive v. Kansas City, 321 Mo., 969, 13 S. W. (2d) 628.

*William McCraw,* Attorney General, *Effie Wilson Waldron* and *Victor W. Bouldin,* Assistants Attorney General, for respondents.

MR. JUSTICE CRITZ delivered the opinion of the court.

This is an original mandamus proceeding instituted in this Court by the City of Waco, Texas, against the Honorable William McCraw, Attorney General of Texas, to compel the approval of an issue of $41,000.00 of revenue bonds of such City. The case is submitted on an agreed statement of facts. Only law questions are involved. We shall not attempt to detail all of the facts. It is sufficient to say that all proceedings relative to the issuance of these bonds were regular, and they are entitled to be approved, unless they are illegal for some of the reasons we shall discuss.

It appears that the City originally proposed to issue these bonds under Article 2802e, Vernon's Revised Civil Statutes of Texas, 1935, Pocket Supplement (Acts, 1933, 43d Legislature, p. 330, ch. 130, as amended 1934, 43d Legislature, 2d Called Session, p. 88, ch. 36, par. 1; Acts, 1934, 43d Legislature, 4th Called Session, p. 44, ch. 14, par. 1, p. 76, ch. 31, par. 1; Acts 1935, 44 Leg., p. 127, ch. 50, par. 1. It further appears that this law expired by operation of its own terms at the close

of December 31, 1935. These bonds had not been issued or presented for approval prior to such expiration date. It is thus evident that if the above statute is the only authority for their issuance, they should not be approved.

It appears from the face of these bonds and pertinent orders of the City Commission of the City of Waco that these bonds are proposed to be issued for the following purposes: " * * * to provide funds for the construction of a new stadium, including labor for dismantling and re-erecting an existing grandstand, foot-ball field, cinder running track, and incidental facilities * * *."

It is the contention of the City that even though, in the bonds themselves and pertinent orders pertaining thereto, it expressed an intention to act under the above-mentioned, now expired, statute, still these bonds are legal and authorized to be issued and approved under the provisions of House Bill 110, ch. 453, p. 1741, Acts 2d Called Session, 44th Legislature, effective November 14, 1935. The Act in question, omitting the sections not pertinent here, reads as follows:

"SECTION 1. All cities and towns, including Home Rule cities, in the State of Texas, shall have power to build and purchase, to mortgage and encumber any of the hereinafter named project and/or projects, to wit: parks and/or swimming pools, golf courses, golf course club houses, ball parks, fairgrounds, exposition buildings, airports, and the land upon which the same are situated, either or all, and the income therefrom and everything pertaining thereto acquired or to be acquired and to evidence the obligation therefor by the issuance of bonds, notes or warrants, and to secure the payment of funds to purchase same or funds with which to construct and equip the same; and as additional security therefor, by the terms of such encumbrance, may grant to the purchaser under sale or foreclosure thereunder, a franchise to operate the projects herein enumerated and properties so purchased for a term of not over twenty (20) years after purchase, subject to all laws regulating same then in force. No such obligation of any such project and/or projects shall ever be a debt of said city or town, but solely a charge upon the properties of the project and/or projects so encumbered, and shall never be reckoned in determining the power of any such city or town to issue any bonds for any purpose authorized by law.

"SEC. 2. None of the projects named in Section 1 of this Act, nor the land upon which the same are situated, shall ever be sold until such sale is authorized by a majority vote of the

qualified voters of such city or town; nor shall the same be encumbered for more than Five Thousand Dollars ($5000), except for purchase money, or funds with which to construct and equip the same or to refund any existing indebtedness lawfully created, until authorized in like manner. Such vote in either case shall be ascertained at an election, which election shall be held and notice thereof given as is provided in the case of the issuance of municipal bonds by such cities and towns, provided that no election shall be necessary for the encumbering of golf courses, golf course club houses, fairgrounds, airports and exposition buildings and the land upon which the same are situated, where encumbrances of any such project and/or projects has or have already been authorized at the time of the passage of this Act by a majority vote of the qualified voters at an election held for such purpose.

\* \* \* \* \* \* \*

"SEC. 5. The fact that the present law, authorizing the issuance of revenue supported securities by the cities and towns of Texas, does not include the projects included within this Act, and the fact that many cities in Texas desire to issue revenue supported securities for the purpose of constructing, equipping and extending such project and/or projects named in this Act and to borrow the necessary funds therefor from the Federal Emergency Administration of Public Works, and other Federal Agencies, and the further fact that the construction and extension of such project and/or projects will furnish an opportunity to labor for those citizens of the State who have been rendered dependent upon the public by reason of the existing economic depression create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House is to be suspended, and the said Rule is hereby suspended and this Act shall take effect from and after its passage, and it is so enacted."

■ It is our opinion that the mere fact that the City, in the bond order and other pertinent orders and matters relating thereto, expressed an intention to act under the provisions of Article 2802e, supra, now expired, will not prevent the issuance of these bonds under Chapter 453, supra, if such last mentioned Act is otherwise sufficient to authorize the same. 43 C. J., p. 525, par. 807; McQuillan on Municipal Corporations, Vol, 2, p. 678. This is admitted by the Attorney General.

■ A reading of Chapter 453, supra, discloses that it authorizes

all cities and towns, including home rule cities, to mortgage and encumber their "parks, swimming pools, golf courses, golf course club houses, ball parks, fairgrounds, exposition buildings, airports, and the land upon which same are situated, either or all, and the income therefrom, and everything pertaining thereto, acquired or to be acquired, and to evidence the obligation therefor by the issuance of bonds, * * * ." We think the purposes set out in Chapter 453, supra, are amply broad enough to cover the purposes for which these bonds are to be issued. In this connection, we think authority to issue bonds for "parks" and "ball parks" is amply sufficient to cover the "construction of a new stadium, including labor for dismantling and re-erecting an existing grandstand, foot-ball field, cinder running track, and incidential facilities." Lewis et al. v. City of Fort Worth, 126 Texas, 458, 89 S. W. (2d) 975, and authorities cited.

◼ The Attorney General contends that these bonds cannot be authorized or approved under authority of Chapter 453, supra, because, under the record before us, they will be the bonds of the Waco Independent School District, and not the bonds of the City of Waco as a strict municipal corporation. In this connection it is contended by the Attorney General that Chapter 453, supra, is a grant of power to cities and towns, including home rule cities, in their capacities as strict municipalities, and not in their capacities as independent school districts. We find no words in the Act indicating such restricted legislative intent. In other words, we think Chapter 453, supra, can be applied to cities and towns, including home rule cities, which have assumed control over their public free schools, even where the bonds are issued by the city in its capacity as an independent school district. In this connection it is true that Article 2768, R. C. S., 1925, which authorizes cities and towns to assume control of their public free schools, confers upon such cities and towns a dual character, together with dual powers, but this does not operate to prevent Chapter 453, supra, from covering such cities in both characters. In fact, when a city builds and operates parks, swimming pools, golf courses, and other things named in Chapter 453 itself, it acts in a proprietary capacity rather than in a strict municipal capacity.

◼ The emergency clause to Chapter 453, supra, has already been quoted. It will be noted that it states "that the present law, authorizing the issuance of revenue supported securities by cities and towns of Texas, does not include the projects included within this Act, * * * ." The Attorney General contends

that the words just quoted demonstrate a legislative intent to confine the bonds to be issued under Chapter 453, supra, to purposes other than already then authorized by Article 2802e, supra. The last named statute was passed by a prior legislature. It is true that it is proper to look to all parts of a legislative Act, including the body of the Act, the caption, and the emergency clause to ascertain the legislative intent, and when such intent is once ascertained it is the law. In spite of this rule, we think the words of the emergency clause to Chapter 453, supra, were not intended as a limitation on the Act itself, but merely express the construction placed by that Legislature on an Act passed by a prior Legislature. Such a legislative construction is not controlling; on the other hand, it is entitled to very little weight. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas, 21, 52 S. W. (2d) 56, and authorities therein cited. It is evident that we overrule this contention.

■ An examination of this record discloses that the bonds here involved, and the pertinent proceedings had in connection therewith, affirmatively show that these bonds can never become a claim against the tax funds of the City, but the holder must look alone to the security named therein, which is a pledge of the revenues of the system to be constructed with their proceeds, after deducting reasonable operation and maintenance expenses. Such bonds do not constitute a debt. City of Dayton v. Allred, 123 Texas, 60, 68 S. W. (2d) 172; City of Houston v. Allred, 123 Texas, 334, 71 S. W. (2d) 251; Lower Colorado River Authority v. McCraw, 125 Texas, 268, 83 S. W. (2d) 629. This is admitted by the Attorney General. Also, the Attorney General correctly admits that no election was necessary to authorize the issuance of these bonds because, under the express terms of Chapter 453, supra, no election is necessary for the issuance of the bonds therein authorized "for purchase money or funds with which to construct and equip the same."

From all that has been said, it is evident that we hold that the provisions of Chapter 453, supra, are sufficient to authorize the issuance and approval of these bonds.

The mandamus will issue as prayed for by the relator.

Opinion delivered April 22, 1936.