## TEXAS POWER & LIGHT CO. v. CITY OF SULPHUR SPRINGS.

### No. 5316.

Court of Civil Appeals of Texas.
Texarkana.

April 3, 1937.

Rehearing Denied April 8, 1937.

Worsham, Burford, Ryburn & Hincks, of Dallas, and J. K. Brim and T. J. Ramey, both of Sulphur Springs, for appellant.

G. B. Rogers, of Waco, C. C. McKinney, of Cooper, and L. E. Teer, of Sulphur Springs, for appellee.

WILLIAMS, Justice.

This is an appeal from an order denying an application for temporary injunction in which appellant sought to restrain the city of Sulphur Springs from disposing of or selling certain revenue bonds until a referendum as mentioned in article 2368a, Vernon's Ann.Civ.St., should be had approving the issuance of such bonds.

The city, in pursuance of an ordinance passed September 1, 1936, held an election on September 18, 1936, and submitted to the qualified electors in that city whether revenue bonds of said city in the sum of $240,-000 should be issued. Nine hundred votes were cast and a majority voted for the issuance of the revenue bonds. No issue is raised as to the regularity of this election. But plaintiff attacks this election and pleads: "There was no legal authority for holding said election and the vote in the same was nothing more than a straw vote, and the election was void. The election was premature and was not held at the time provided for and contemplated by the bond and warrant law known as article 2368a of R.S. of Texas."

Therefore the disposition of this appeal involves the construction of articles 2368a, 1111 to 1118, and other related statutes which will be discussed herein.

The pleadings quoted above have reference to sections 4 and 11 of article 2368a, which read:

Section 4. "If, by the time set for the letting of the contract, as many as ten per cent (10%) in number of the qualified voters of said county, or city, as the case may be, whose names appear on the last approved tax rolls as property taxpayers, petition the Commissioners' Court, or governing body, in writing to submit to a referendum vote the question as to the issuance of bonds for such purpose, then such Commissioners' Court, or governing body, shall not be authorized to make said expenditure, and shall not finally award said contract unless the proposition to issue bonds for such purpose is sustained by a majority of the votes cast at such election. The law in reference to elections for the issuance of city and county bonds as contained in Chapters 1 and 2, Title 22, Revised Statutes of 1925, shall govern in so far as consistent with the provisions of this Act. The law in reference to the issuance, approval, registration and sale of bonds as contained in Chapters 1 and 2, Title 22, Revised Statutes of 1925, shall govern insofar as consistent with the provisions of this Act. Provided, that all such bonds shall mature and be payable as provided herein for funding bonds.

"If such petition is not so filed with the County Clerk, or the City Secretary or Clerk, then the Commissioners' Court or the governing body may proceed with the final award of the contract and with the issuance of said warrants, but in the absence of such petition, the Commissioners' Court or governing body may at its discretion also submit such question to a vote of the people."

Section 11. "Nothing herein shall be so construed as to preclude any city * * * from encumbering or mortgaging its light system, * * * and the franchise and the income thereof, * * * to secure the payment of funds to purchase same, * * * as contemplated in Articles 1111 to 1118, both inclusive, of the Revised Civil Statutes of Texas, 1925, with amendments thereto, or by valid provisions of the charter of such city or town, or by the provisions of Article 1175, Revised Civil Statutes of Texas, 1925, provided, that in making such contracts or agreements or encumbrances and in issuing revenue bonds, warrants or other obligation to be paid out of the property and income from such system or systems, the governing body of such city * * * shall comply with the provisions of this Act in regard to notice and competitive bids and the right to a referendum of such question."

Section 5 of the same act provides: "The right to referendum election defined in Section 4, shall not be applicable to expenditures payable out of current funds or bond funds, as above described."

Section 1 of this act states: "The term 'bond funds' shall include money in the treasury already received from the sale of bonds, and the proceeds of bonds theretofore voted but not yet issued and delivered."

This issue of $240,000 revenue bonds has been approved by the Attorney General, registered by the Comptroller, and these bonds now are in possession of the governing body of the City of Sulphur Springs.

If these are "the proceeds of bonds theretofore voted but not yet issued and delivered," then section 5 of article 2368a applies, and it is not necessary that a referendum as provided for in section 4 of this act be had before the city can dispose of same. As will be noted in reading section 1 of the act, it uses the term "money in the treasury already received from the sale of bonds, and the proceeds theretofore voted but not yet issued and delivered."

This brings us to the question if these revenue bonds have been voted in contemplation of this article and other statutes related to same.

Section 10 of article 2368a provides: "In all cities operating under Special Charter the provisions of this Act shall apply, providing for a referendum vote where the proposed expenditure is not payable out of current funds, or bond funds. * * * This Act shall not repeal provisions of Special Charters providing any additional rights to referendum elections."

The City of Sulphur Springs operates under a special charter which contains provisions as to the issuance of bonds, to wit:

"Provided, however, that said Commission shall not issue any bonds of the said city without first having submitted the same to a vote of the people as provided for in the charter, except those bonds provided for in this charter. * * *

"The commission shall not have the power to issue any other bonds than those specifically provided for herein, against the said city, without and unless the property tax payers of said city, at an election held

for that purpose, as provided for by the general laws of the State of Texas, declare by a majority vote in favor of the issuance of said bonds."

Other provisions of this charter require that a levy to take care of the interest and sinking fund on such bonds shall be made.

Article 701 of title 22 of the Revised Statutes of Texas reads: "The bonds of a county or an incorporated city or town shall never be issued for any purpose unless a proposition for the issuance of such bonds shall have been first submitted to the qualified voters who are property tax payers of such county, city or town."

Other articles under title 22 detail the manner, form, and time for submitting such a proposed bond issue to the people; and require that at the same time the governing body shall submit the question of whether or not a tax shall be levied sufficient to pay said bonds.

■ We refer back to section 4 of article 2368a and read: "In the absence of such petition, the Commissioners' Court or governing body may at its discretion also submit such question to a vote of the people."

Article 701 had been the law of this state for many years prior to the passage of article 2368a. The Legislature, when they passed article 2368a in 1931, did not repeal any article in title 22, but, to the contrary, provided in said act: "The law in reference to elections for the issuance of city and county bonds as contained in Chapters 1 and 2 Title 22, Revised Statutes of 1925, shall govern in so far as consistent with the provisions of this Act."

The provisions in the charter for the City of Sulphur Springs are similar to the articles in title 22 of the Revised Statutes as to manner, mode, and time for submission of a bond election to the vote of the people. The Legislature has stated that Chapters 1 and 2 of title 22 shall govern in so far as consistent with the provisions of article 2368a. And article 2368a specially provides that same shall not repeal provisions of special charters providing any additional rights to referendum elections.

■ Since article 701 et seq. became the law of this state, governing bodies of cities and counties have uniformly determined the time for holding bond elections and the amounts to be issued prior to the drawing of plans or the making of contracts for public works. Lewis v. City of Fort Worth, 126 Tex. 458, 89 S.W.(2d) 975.

■ Taking into consideration the provisions in article 701 of the Revised Statutes, the Charter of the City of Sulphur Springs, and that part of section 4 of article 2368a last quoted, the governing body of the City of Sulphur Springs had the authority to call the election held on September 18, 1936. The election being legally called, no contest being made as to any irregularity about the election, and the revenue bonds having been printed, approved, and registered, they come within the definition of section 1 of article 2368a, reading: "and the proceeds of bonds theretofore voted but not yet issued and delivered." Therefore it is not incumbent upon the City of Sulphur Springs to hold a referendum or another election before they can legally dispose of same, and the trial court did not err in refusing to grant a temporary writ of injunction.

We are of the further opinion that the trial court did not err in refusing this writ of injunction. In City of Dayton v. Allred, 123 Tex. 60, 68 S.W.(2d) 172, 177, by Justice Critz, we find this language: "In the instant case the city of Dayton has no sewer system and expects to use the money derived from the sale of these bonds in the construction, acquisition, and completion of such a system. It is our opinion that such a record justifies the conclusion that, in so far as the proposed sewer system here involved is concerned, the mortgage thereon is for purchase money within the meaning of article 1112. While it is for more than $5,000, being for purchase money, it is not required by this statute that a vote be had."

■ The facts in this case are undisputed that the city does not own a light system; that these bonds were issued to purchase a system; that these are revenue bonds issued under the provisions of articles 1111 to 1118, and secured only by the income franchise and plant to be acquired, and hence the referendum mentioned in article 2368a is not applicable to the facts here.

But we construe the opinion in the City of Dayton v. Allred to hold that, if a city attempts to mortgage the plant already owned in order to purchase another utility, then article 2368a will have application to articles 1111 to 1118.

The decree of the trial court is affirmed.