**SABINE PRODUCTION COMPANY,**
Appellant,

v.

**FROST NATIONAL BANK OF SAN ANTONIO, Trustee, et al., Appellees.**

**No. 1610.**

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 28, 1980.

Rehearing Denied March 27, 1980.

Robert B. Payne, Ronald G. Houdyshell, Payne & Spradley, Dallas, for appellant.

John H. Tate, II, Seagal V. Wheatley, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., Kip McKinney Espy, Fred C. Meyer, Jr., Matthews, Nowlin, Macfarlane & Barrett, San Antonio, for appellees.

## OPINION

BISSETT, Justice.

This venue case involves an appeal by Sabine Production Company [Sabine], a corporation, from an order of the District Court overruling its plea of privilege to be sued in Dallas County, where its principal office was located, rather than in Live Oak County, where suit was filed. The plea of privilege, which involves questions of venue under Tex.Rev.Civ.Stat.Ann. art. 1995 §§ 5, 14, 23, 27 and 29a, arises out of a suit concerning royalty rights under a uranium lease covering land in Live Oak County.

The controversy began with an action for trespass to try title and declaratory judgment brought by National Bank of Commerce of San Antonio and others [hereinafter collectively referred to as NBC] against Frost National Bank of San Antonio and others [hereinafter collectively referred to as Frost], the purpose of which was a judicial determination that a certain 1975 uranium lease was not subject to a 1944 pooling agreement concerning the same property. Subsequently, United States Steel Corporation [U. S. Steel], the present lessee under the uranium lease, asked for judicial resolution of the royalty rights pursuant to the 1975 uranium lease.

Frost then filed a counterclaim against NBC along with an "Original Claim" against U. S. Steel, Clay West Burns [ C. W. Burns] and Sabine. The object of the counterclaim and "Original Claim" by Frost was multifaceted. First, Frost sought a declaratory judgment that the 1975 uranium lease was subject to the 1944 pooling agreement. Second, Frost attempted to impress a constructive trust upon its pro rata share of all past and future royalty payments under the pooling agreement for uranium produced under the uranium lease. Third, Frost, because of alleged fraud and breach of fiduciary duty, sought to recover actual and exemplary damages against Sabine (and others) to be computed upon the difference between the royalty formula expressed in the pooling agreement and the actual royalties received under the formula expressed in the uranium lease. Finally, Frost sought to have the uranium lease reformed to the terms and scope of the pooling agreement.

After being brought into the controversy by Frost, Sabine filed a plea of privilege to be sued in Dallas County. Sabine is a Louisiana corporation with its principal place of business in Dallas County, Texas. Frost then filed a controverting plea alleging venue over Sabine in Live Oak County pursuant to the aforesaid subdivisions of the venue statute. Following a hearing at which only deposition and documentary evidence was presented, the trial court overruled Sabine's plea of privilege. Sabine attacks the order in four points of error.

Sabine contends, in its third point, that Subdivision 5 of the venue statute does not permit Frost to bring the subject suit against it in Live Oak County. In order to sustain venue under Subdivision 5, the single fact that the party asserting venue is required to prove is that the defendant (in this case Sabine) contracted in writing to perform the obligation sued upon in the county of suit and that such instrument of writing expressly named that county, or a definite place therein, as the place where the obligation is to be performed. *Petroleum Producers Co. v. Steffens,* 139 Tex. 257, 162 S.W.2d 698 (1942); *Vahlsing, Inc. v. Esco, Ltd.,* 496 S.W.2d 652 (Tex.Civ.App.— Corpus Christi 1973, writ dism'd).

In its controverting affidavit, Frost urged venue under Subdivision 5 based upon the fact that the suit involved the breach of various duties concerning the 1944 pooling agreement. Sabine, however, was not a party to the pooling agreement nor did it ratify such agreement. Only a contract that has been entered into by a party or one authorized to bind him, or which has been assumed or ratified by him, can constitute the basis upon which to hold venue under Subdivision 5. *Jordan v. Rule,* 520 S.W.2d 463 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). Thus, venue over Sabine in Live Oak County is not sustainable if it is based, solely or in part, on the 1944 pooling agreement.

Another written contract involved in the suit between Frost and Sabine is the 1975 uranium lease, to which Sabine is signatory. It is also Frost's contention that venue under Subdivision 5 can properly be based upon this written agreement. The resolution of this argument depends upon whether the obligation sued upon is expressly performable "in a particular county" as provided by Subdivision 5. Paragraph VIII of the lease states:

"It is expressly and controllingly provided that all rentals, royalties and other payments of any kind and character, provided for in this Lease shall be payable in Live Oak County, Texas, *except that if the depository bank (or any successor depository bank) shall be located in any county other than Live Oak County, Texas, then the annual rentals and royalties and other such payments herein provided for may be paid or tendered to such depository bank, as herein provided notwithstanding that such depository bank is not located in Live Oak County, Texas.*" (emphasis added).

The emphasized portion of Paragraph VIII of the lease clearly allows for the possibility of payment in counties other than Live Oak. A contract providing for payment in more than one county is not performable "in a particular county" within the meaning

of Subdivision 5. *Dean v. Paula Stringer Realtors, Inc.,* 583 S.W.2d 954 (Tex.Civ.App. —Dallas 1979, no writ); *Albin v. Hughes,* 304 S.W.2d 371 (Tex.Civ.App.—Dallas 1957, no writ). Hence, venue over Sabine is not sustainable under Subdivision 5. Sabine's third point of error is sustained.

By its fourth point of error, Sabine contends that venue in Live Oak County cannot be sustained under Subdivisions 23 and 27 because there is no evidence of each element of a cause of action accruing in whole or in part in Live Oak County. A plaintiff who controverts a plea of privilege under Subdivisions 23 and 27 on the basis that the cause of action or a part thereof arose or accrued in the county where suit was filed, must plead and prove a complete cause of action against the corporate defendant. *Kroger Co. v. Benavides,* 486 S.W.2d 877 (Tex.Civ.App.—Corpus Christi 1972, no writ). A cause of action is established by facts which show: 1) plaintiff's primary right and 2) defendant's act or omission which violates that right. *Socony Mobil Co., Inc. v. Southwestern Bell Telephone Co.,* 518 S.W.2d 257 (Tex.Civ.App.— Corpus Christi 1974, no writ). It is not sufficient that plaintiff merely establish a prima facie case. *Victoria Bank & Trust Co. v. Monteith,* 138 Tex. 216, 158 S.W.2d 63 (Tex.Comm'n App. 1941, opinion adopted).

Frost alleged a cause of action against Sabine based on interference with contract and fraud. Texas recognizes the tort of intentional interference with contract rights. When a person knowingly induces another to breach his contract with third parties, the third parties have a right of action against the person causing the breach for any resulting damages. *Raymond v. Yarrington,* 96 Tex. 443, 73 S.W. 800 (Tex.Sup.1903); *Woodruff v. Bryant,* 558 S.W.2d 535 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). In the case at bar there must be evidence that Sabine actually caused or brought about a breach of the 1944 pooling agreement, *Woodruff v. Bryant,* supra, and that the actionable conduct was willful and intentional with actual knowledge of the contract in question.

*Frost National Bank v. Alamo National Bank,* 421 S.W.2d 153 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.). We hold that Frost has failed to establish these elements by a preponderance of the evidence.

Texas also recognizes undue influence as a species of fraud. *Curry v. Curry,* 153 Tex. 421, 270 S.W.2d 208 (Tex. Sup.1954); *Finch v. McVea,* 543 S.W.2d 449 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). This is basically what Frost alleged in its claim against Sabine. Undue influence may be exercised by fraud or by influence of the strong over the weak. *Curry v. Curry,* supra; *Smith v. Mann,* 296 S.W. 613 (Tex.Civ.App.—San Antonio 1927, writ ref'd). Although undue influence is a species of fraud, evidence will not support a legal conclusion of undue influence unless it will support a legal conclusion of fraud. *Curry v. Curry,* supra; *Finch v. McVea,* supra.

The essential elements of actionable fraud are enumerated in *Custom Leasing, Inc., v. Texas Bank & Trust Co. of Dallas,* 516 S.W.2d 138, 143 (Tex.Sup.1974), and in *Sawyer v. Pierce,* 580 S.W.2d 117, 124 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). We see no reason to republish those elements. We hold that Frost failed to prove these elements. Venue as to Sabine cannot be held in Live Oak County under Subdivisions 23 and 27. Sabine's fourth point is sustained.

By its first point of error, Sabine contends that the trial court erred in overruling its plea of privilege based upon Subdivision 14. Venue facts which Frost had the burden to establish under Subdivision 14 are: 1) that the suit is one for the recovery of land or damages thereto, and 2) that the land, or a part thereof, is situated in the county where the suit is filed. *Cowden v. Cowden,* 143 Tex. 446, 186 S.W.2d 69 (Tex.Sup.1945). Whether the suit is to recover land or damages thereto is determined by the allegations in the plaintiff's petition. *Renwar Oil Corporation v. Lancaster,* 154 Tex. 311, 276 S.W.2d 774 (Tex. Sup.1955).

A royalty in minerals is an interest in land. *Tennant v. Dunn,,* 130 Tex. 285, 110 S.W.2d 53 (Tex.Sup.1937); A right to a *future* royalty payment is an interest in land. *Clyde v. Hamilton,* 414 S.W.2d 434 (Tex.Sup.1967). However, once minerals have been severed from the reservoir or strata wherein they were originally contained, such minerals, including royalties thereon, become personalty. *Lone Star Gas Co. v. Murchison,* 353 S.W.2d 870 (Tex.Civ. App.—Dallas 1962, writ ref'd n.r.e.); *Chapman v. Parks,* 347 S.W.2d 805 (Tex.Civ.App. —Amarillo 1961, writ ref'd n.r.e.); *Phillips Petroleum Co. v. Adams,* 513 F.2d 355 (5th Cir. 1975).

In this case, it is undisputed that the uranium lease and the pooling agreement cover lands situated in Live Oak County. It is conclusively established by the evidence that Sabine sold its entire interest in the uranium lease to U. S. Steel prior to the institution of this lawsuit. Therefore, Sabine does not own any present or future interest in the uranium lease upon which a constructive trust could be imposed, and could not be affected by the reformation of the uranium lease or by a declaratory judgment concerning the lease. Frost's only other claims at the time it brought Sabine into the case concern past and accrued royalties, which are claims for recovery of personalty computed to money equivalents. Such claims are not claims for the recovery of an interest in land within the meaning of Subdivision 14. Sabine's first point is sustained.

By its second point of error, Sabine attacks Frost's attempt to establish venue in Live Oak County as to it through a combination of Subdivisions 14 and 29a. Subdivision 29a has been held to provide that whenever there are two or more defendants in a suit which is maintainable as to at least one such defendant in the county of suit by virtue of some exception to Article 1995, then such suit may also be maintained in such county as to all *necessary* co-defendants. Subdivision 29a is purely ancillary to other exceptions contained in Article 1995, and can never be invoked to fix venue in a given county independent of some other exception contained therein. It applies only to suits against two or more defendants, at least one of whom may be sued in the county under some other section of the venue statute. *Union Bus Lines v. Byrd,* 142 Tex. 257, 177 S.W.2d 774 (Tex.Sup.1944).

It is established by the evidence that U. S. Steel is the present owner of the working interest in the uranium lease, and that C. W. Burns is the lessor thereof. The only question to be resolved in disposing of the second point is whether Sabine is a necessary party to the suit by Frost against U. S. Steel and C. W. Burns.

To be a necessary party, Sabine's joinder in the Live Oak County suit must be necessary in order to afford Frost the complete relief to which it is entitled against U. S. Steel and C. W. Burns. *Ladner v. Reliance Corp.,* 156 Tex. 158, 293 S.W.2d 758 (1956).

An analysis of Frost's pleadings shows that Frost seeks the following relief:

(1) Actual and exemplary damages on the part of C. W. Burns for breach of fiduciary duty;

(2) Actual and exemplary damages because of undue influence by U. S. Steel and Sabine in the inducement of C. W. Burns to sign the uranium lease;

(3) All "past due accrued and prospective damages computed based on the difference between a full undivided one-sixteenth (1/16) royalty computed upon and paid as to the fair market value of production and sale of uranium from the Clay West Burns lands, and the amount of royalty which was actually paid, or may be paid in the future, pursuant to the terms of the Amendment of Mining Lease (the uranium lease)";

(4) Reformation of the uranium lease so as to fall within the terms of the pooling agreement;

(5) A declaratory judgment as to the applicability of the provisions of the pooling agreement to the mining

lease concerning royalty to be paid pursuant to the production of uranium; and,

(6) The impressing of a constructive trust upon "all past and future royalties and upon the mineral estate itself for the purpose of protecting their rights to recover said damages."

Concerning the evidence, it is undisputed that at the time this lawsuit was instituted and at the time of the venue hearing, Sabine did not own any interest in the uranium lease. Therefore, Frost could obtain full and complete relief from U. S. Steel and C. W. Burns without joining Sabine as a defendant in the action to reform the uranium lease, to secure a declaratory judgment declaring the rights of the litigants, and to impress a trust on future royalties. There is no evidence that Sabine was in possession of any "past" royalties, which would be personalty and Sabine had nothing whatever to do with "future royalties." Consequently, venue cannot be sustained under Subdivision 29a in conjunction with Subdivision 14 on the theory that this is a suit for the recovery of land because, as noted, at all times pertinent to this appeal, Sabine had no interest in the land sought to be recovered. With respect to the other relief, the damages sought by Frost were money damages resulting from: 1) breach of fiduciary duty by C. W. Burns; 2) undue influence by U. S. Steel and Sabine in inducing C. W. Burns to sign the uranium lease; and 3) recovery of money for royalties paid on past production of uranium when computed in the proper manner. None of the monies sought were for "damages to land" within the purview of Subdivision 14. The requirements of Subdivision 14 were not met so as to sustain venue under Subdivision 29a. Sabine's second point is sustained.

The judgment of the trial court is REVERSED and judgment is RENDERED that the plea of privilege of Sabine Production Company is sustained, and that the cause against it be transferred to Dallas County, Texas.

REVERSED AND RENDERED.