TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00600-CV






Anadarko E&P Company, LP, Appellant


v.


Clear Lake Pines, Inc., V. A. Hrbacek and Jean Hrbacek, Appellees







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT

NO. 2001V197, HONORABLE HENRY J. STRAUSS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Anadarko E&P Company LP appeals from a summary judgment granted in favor of
Clear Lake Pines, Inc., V. A. Hrbacek and Jean Hrbacek, (1) and asks this Court to reverse that grant
and render a take-nothing judgment. The issue on appeal is whether Anadarko is obligated to pay
the statutory interest on late-paid royalties either under section 91.403 of the Texas Natural
Resources Code or by agreement. See Tex. Nat. Res. Code Ann. § 91.403 (West 2001). For the
reasons set forth below, we hold that Anadarko is not obligated to pay the interest on the late-paid
royalties. We reverse the order of the district court and render a take-nothing judgment in favor of
Anadarko.

FACTUAL AND PROCEDURAL BACKGROUND Clear Lake is the owner and lessor of various oil and gas wells, and Anadarko is the
leaseholder of those wells. The previous leaseholder was Edco Energy, and the purchaser of
condensate was Mesa Pipeline Company. Clear Lake was the owner of the royalty interest in the
mineral production from the wells. Mesa failed to pay royalties for the production from a particular
well from December 1993 to April 1995. Eventually, Mesa paid the late royalties to Clear Lake at
the end of September 1997, long after Anadarko had acquired the leasehold from Edco on March 10,
1995. Clear Lake believed it was owed statutory interest for the late royalties under the Texas
Natural Resources Code, and filed suit against Anadarko for those interest payments, alleging that
Anadarko was liable for statutory breach by failing to pay interest on the late royalties. Id. Clear
Lake did not file suit against Mesa or Edco.

 Anadarko filed summary judgment motions, which were denied. Clear Lake filed its
own summary judgment motion, which was granted, and Clear Lake was awarded the statutory
interest on the well for which royalties were late, and attorney's fees. Anadarko appeals and asks
that we reverse the trial court and render judgment in its favor.


STANDARD OF REVIEW


 When both parties move for traditional summary judgment, each side bears the
burden it would normally have as movant under the usual standards of summary judgment, as well
as the usual burden of response as nonmovant. City of Houston v. McDonald, 946 S.W.2d 419, 420
(Tex. App.--Houston 1997, writ denied). A grant of summary judgment is proper if the movant has
established that there is no genuine issue of material fact and the movant is entitled to judgment as
a matter of law. Fort Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004). 
When both parties move for summary judgment, as in this case, and the trial court grants one motion
but denies the other, the reviewing court should review the summary judgment evidence presented
by both sides and determine all questions presented. Commissioners Court v. Agan, 940 S.W.2d 77,
81 (Tex. 1997). The reviewing court should render such judgment as the trial court should have
rendered. Id. In reviewing the appeal, this Court will indulge all reasonable inferences and resolve
all doubts in favor of the losing party. University of Tex. Health Sci. Ctr. v. Big Train Carpet, Inc.,
739 S.W.2d 792, 792 (Tex. 1987).


DISCUSSION


 The general question before us is whether Anadarko is liable for the statutory interest
for the late royalties Mesa paid under section 91.403 of the natural resources code, or whether it is
liable for that interest pursuant to a contractual provision. See Tex. Nat. Res. Code Ann. § 91.403(a)
(West 2001). Specifically, Clear Lake argues that Anadarko is the statutory "payor" as defined in
section 91.401 and that Anadarko assumed the obligations of the "payor" through its lease with Clear
Lake and through the "Permitted Encumbrances" section of its Asset Purchase Agreement with
Edco. See id. § 91.401(a) (West 2001). Anadarko responds that it does not fit the definition of
"payor" in section 91.401 and that none of its agreements provided for its assumption of the
obligation to pay royalties or interest on minerals extracted prior to the transfer of the leasehold. See
id.

 In 1995, Edco and Anadarko entered into an Asset Purchase Agreement transferring
the interest in the leasehold from Edco to Anadarko. The Agreement states that Anadarko acquired
the lease free from defect, except for designated "permitted encumbrances." By agreement, these
encumbrances include "[l]essors' royalties, overriding royalties, revisionary interests, and similar
burdens . . . in any of the Properties as such interests are set forth on Exhibit 'B.'" They further
include "all other contracts, agreements, instruments and obligations affecting the oil and gas
leasehold estate." Exhibit "B" of the agreement describes a number of mineral wells. There was
also a lease between Anadarko and Clear Lake providing that Anadarko would pay royalties on the
oil and gas of the described properties after the closing date. We conclude that because the natural
resources code did not obligate Anadarko to pay statutory interest, and because Anadarko did not
agree to assume any such obligation from whomever was obligated under the statute, Anadarko is
not liable for any of the statutory interest on the late-paid royalties.


The Natural Resources Code on Payment for Proceeds of Sale


 Section 91.402 of the natural resources code provides the time frame in which the
"payor" must pay proceeds from the sale of oil or gas production to the "payee." Tex. Nat. Res.
Code Ann. § 91.402(a) (West 2001). It specifies the deadlines for payment of proceeds. Id. Section
91.403 requires the "payor" to pay interest to a payee if the payments for oil and gas produced are
not made within specific time limits. Id. § 91.403(a). Section 91.404 provides the "payee" with a
cause of action for nonpayment of the mineral proceeds or interest on those proceeds covered under
the previous sections. Id. § 91.404(c) (West 2001). Section 91.401 defines "payor":

The payor is the first purchaser of such production of oil or gas from an oil or gas
well, unless the owner of the right to produce under an oil or gas lease or pooling
order and the first purchaser have entered into arrangements providing that the
proceeds derived from the sale of oil or gas are to be paid by the first purchaser to the
owner of the right to produce who is thereby deemed to be the payor having the
responsibility of paying those proceeds received from the first purchaser to the payee.


Id. § 91.401(a).



 We must first determine, then, whether Anadarko was a "payor" under the code. The
Agreement and the lease reflect that Anadarko was the "owner of the right to produce." There is
nothing in the record to show that Anadarko was the "first purchaser" of the production of oil or gas. 
Anadarko describes Mesa as the "first purchaser." Clear Lake does not argue that Mesa was not the
"first purchaser," and its pleadings describe Mesa as the "purchaser of condensate" of the well for
which royalty payments were late. Thus, absent an "arrangement" between Mesa and Anadarko
providing that Mesa pay Anadarko the proceeds, or absent a prior arrangement between Mesa and
Edco providing that Mesa pay Edco the proceeds, Mesa was the "payor." There is no evidence in
the record showing the existence of such an arrangement, and what evidence there is appears to
contradict any claim that there was such an arrangement. As the first purchaser, Mesa was
responsible for paying royalties to the payee unless the first purchaser and the owner of the right to
produce had entered into some other "arrangement." Id. Clear Lake's pleadings, affidavits,
responses to summary judgment motions, check stubs, and brief all describe Mesa as having been
the party paying the royalties. Clear Lake's own evidence negates the proposition that there was an
arrangement between Mesa and Edco or Mesa and Anadarko making Edco or Anadarko responsible
for payments.

 As the "first purchaser," therefore, Mesa was the "payor," and so was statutorily
obligated to pay royalties by the expiration time set out in section 91.402 and, in the event of a late
payment, the statutory interest required by section 91.403. See id. §§ 91.402(a), .403(a).


Permitted Encumbrances of the Asset Purchase Agreement


 Under Texas law, an encumbrance is an interest in realty that diminishes its value and
is a burden on its transfer. City of Dayton v. Allred, 68 S.W.2d 172, 178 (Tex. 1934); Nationwide
of Bryan, Inc. v. Dyer, 969 S.W.2d 518, 521 (Tex. App.--Austin 1998, no pet.). Examples of
encumbrances include liens, claims, easements, and servitudes. Allred, 68 S.W.2d at 178. In certain
jurisdictions, there can be "encumbrances" on personal property as well. See, e.g., Hartford Fire Ins.
Co. v. Jones, 250 P. 248, 251 (Ariz. 1926); Black's Law Dictionary 908 (4th ed. 1968). In Texas,
we find no case law extending the concept beyond its traditional scope, and Clear Lake cites none. 

 Under Texas law, unaccrued royalties on oil and gas are interests in realty. Clyde v.
Hamilton, 414 S.W.2d 434, 438 (Tex. 1967). Accrued royalties, however, are interests in personal
property. Yzaguirre v. KCS Res., Inc., 53 S.W.3d 368, 371 (Tex. 2001) (quoting Texas Oil & Gas
Corp. v. Moore, 630 S.W.2d 450, 452-53 (Tex. App.--Corpus Christi 1982, writ dism'd w.o.j.)). 
Oil and gas severed (extracted) from the land become personal property. Phillips Petroleum Co. v.
Mecom, 375 S.W.2d 335, 339 (Tex. Civ. App.--Austin 1964, no writ); Lone Star Gas Co. v.
Murchison, 353 S.W.2d 870, 879 (Tex. Civ. App.--Dallas 1962, writ ref'd n.r.e.). Royalties accrue,
and therefore become interests in personal property, at the time the minerals are severed from the
land. Phillips Petroleum Co. v. Adams, 513 F.2d 355, 363 (5th Cir. 1975); Moore, 630 S.W.2d at
452; Sabine Prod. Co. v. Frost Nat. Bank, 596 S.W.2d 271, 276 (Tex. App.--Corpus Christi 1980,
writ dism'd). It follows then that royalties become interests in personalty at the time the minerals
for which they are owed become personalty. See Phillips, 513 F.2d at 363; Sabine, 596 S.W.2d at
276.

 The question, then, is whether Anadarko assumed any obligation to pay the statutory
interest through the Asset Purchase Agreement with Edco. The initial answer is that it did not: 
Anadarko could not assume such an obligation from Edco unless Edco had that obligation, that is,
unless Edco was the "payor." There was no evidence in the record showing that Edco was the
"payor" because there was no evidence of a section 91.401 "arrangement" between Edco and Mesa,
but there was sufficient evidence in the record to show that Mesa was the "payor." As the
Agreement was between Anadarko and Edco, not Anadarko and Mesa, and as Edco had no
obligation to pay the statutory interest that Anadarko could assume, Anadarko assumed no such
obligation. However, if we accept for the sake of argument that there was an "arrangement" between
Edco and Mesa making Edco the "payor," nothing in the Agreement required Anadarko to assume
the statutory interest obligation.


1. "Lessors' royalties"


 Clear Lake claims that Anadarko assumed the royalty payments and therefore the
interest payments as a "permitted encumbrance" under the Agreement. The Agreement lists
"[l]essors' royalties . . . in any of the Properties as such interests are set forth on Exhibit 'B'" as a
permitted encumbrance. First, encumbrances are interests in realty in Texas. Allred, 68 S.W.2d at
178. Because the late-paid royalties were interests in personalty prior to the leasehold
transfer--since the minerals for which they were owed were severed prior to the leasehold transfer
of March 10, 1995--they are not an "encumbrance" in Texas, and thus Anadarko did not assume the
obligation to pay them. Second, because the property interests in Exhibit "B" of the Agreement are
all wells, not the severed minerals for which the late royalties were paid, Anadarko did not assume
those royalty obligations, whatever the scope of "encumbrance." Anadarko only assumed the
obligations to pay unaccrued royalties, that is, royalties that accrued after the closing date of the
agreement. Thus, Anadarko could not have assumed the obligation to pay the statutory interest on
the late royalties.


2. "Obligations affecting the oil and gas leasehold estate"


 The Agreement also includes as permitted encumbrances "all other contracts,
agreements, instruments and obligations affecting the oil and gas leasehold estate." Again, the
royalties accrued prior to the leasehold transfer were not encumbrances on the leasehold and
therefore did not "affect" it. Even so, since only royalties on the wells encumbered the leasehold,
the royalties on the severed minerals could not "affect" the leasehold. See Phillips, 513 F.2d at 363. 
Thus, Anadarko did not assume the obligation to pay the statutory interest on such royalties.


Anadarko's Lease


 In its summary judgment motion, Clear Lake argues that Anadarko assumed the
statutory interest obligation through its lease with Anadarko, which provides that Anadarko is to pay
royalties on the oil and gas. There is nothing in the lease providing that Anadarko assumes the
obligation to pay the interest on late-paid royalties by the "payor." Thus, the question is whether an
agreement between the leaseholder of mineral wells and the owner stipulating that the leaseholder
pay royalties is sufficient to make the leaseholder liable under section 91.403 for statutory interest
on late royalty payments.

 The statute obligates the statutorily-defined "payor" to pay royalties within a certain
time and, in the event of late payment, to pay interest on those royalties. Id. §§ 91.401(a), .402(a),
.403(a). It does not provide that anyone who agrees to pay royalties who is not otherwise the
statutory "payor" thereby incurs liability for the statutory interest upon late payment. Liability for
interest does not arise when a party liable for mineral royalties fails to make payments, but only
when the statutory "payor" fails to make payment. See id. It does not follow from the fact that
Anadarko entered into an agreement with the well owner to assume liability for failed or late royalty
payments that it became liable for the statutory interest. The language of the statute does not place
the obligation to pay the interest on Anadarko by virtue of its assumption of the obligation to pay
royalties alone unless, as discussed, it is the "first purchaser," or made an "arrangement" with the
first purchaser. The only arrangement the lease represents is one with the lessor, Clear Lake, not the
first purchaser, Mesa. Anadarko could have agreed to assume the obligation of paying the statutory
interest as well, but it did not do so in the lease with Clear Lake.

 Even under a reading of the statute that finds assuming the obligation to pay royalties
sufficient for someone to be designated the statutory "payor" and therefore obligated to pay the
statutory interest, Anadarko still did not assume the obligation to pay the royalties owed on severed
minerals, but only on the oil and gas of the properties described in the lease. Under the lease,
Anadarko assumed only the obligation to pay royalties due on production occurring after the closing
date. Thus, under an alternative reading of the statute, Anadarko could be the "payor" only of
unaccrued royalties, not the accrued royalties for which statutory interest is sought in this suit.


CONCLUSION


 Because Anadarko was not obligated by the Texas Natural Resources Code to pay the
statutory interest on Mesa's late-paid royalties, and because it did not assume such obligation under
either its lease agreement or the Asset Purchase Agreement, we reverse the district court's order
granting summary judgment in favor of Clear Lake and denying Anadarko's summary judgment
motion. We sustain Anadarko's issues, grant its summary judgment motion, and render a take-nothing judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Rendered

Filed: July 7, 2005


1. Because the interests of the appellees are the same, we will refer to them as "Clear Lake"
for convenience.