# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00600-CV

**Anadarko E&P Company, LP, Appellant**

**v.**

**Clear Lake Pines, Inc., V. A. Hrbacek and Jean Hrbacek, Appellees**

**FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT
NO. 2001V197, HONORABLE HENRY J. STRAUSS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Anadarko E&P Company LP appeals from a summary judgment granted in favor of Clear Lake Pines, Inc., V. A. Hrbacek and Jean Hrbacek,[1] and asks this Court to reverse that grant and render a take-nothing judgment. The issue on appeal is whether Anadarko is obligated to pay the statutory interest on late-paid royalties either under section 91.403 of the Texas Natural Resources Code or by agreement. *See* Tex. Nat. Res. Code Ann. § 91.403 (West 2001). For the reasons set forth below, we hold that Anadarko is not obligated to pay the interest on the late-paid royalties. We reverse the order of the district court and render a take-nothing judgment in favor of Anadarko.

---

[1] Because the interests of the appellees are the same, we will refer to them as "Clear Lake" for convenience.

**FACTUAL AND PROCEDURAL BACKGROUND**

Clear Lake is the owner and lessor of various oil and gas wells, and Anadarko is the leaseholder of those wells. The previous leaseholder was Edco Energy, and the purchaser of condensate was Mesa Pipeline Company. Clear Lake was the owner of the royalty interest in the mineral production from the wells. Mesa failed to pay royalties for the production from a particular well from December 1993 to April 1995. Eventually, Mesa paid the late royalties to Clear Lake at the end of September 1997, long after Anadarko had acquired the leasehold from Edco on March 10, 1995. Clear Lake believed it was owed statutory interest for the late royalties under the Texas Natural Resources Code, and filed suit against Anadarko for those interest payments, alleging that Anadarko was liable for statutory breach by failing to pay interest on the late royalties. *Id.* Clear Lake did not file suit against Mesa or Edco.

Anadarko filed summary judgment motions, which were denied. Clear Lake filed its own summary judgment motion, which was granted, and Clear Lake was awarded the statutory interest on the well for which royalties were late, and attorney's fees. Anadarko appeals and asks that we reverse the trial court and render judgment in its favor.

**STANDARD OF REVIEW**

When both parties move for traditional summary judgment, each side bears the burden it would normally have as movant under the usual standards of summary judgment, as well as the usual burden of response as nonmovant. *City of Houston v. McDonald*, 946 S.W.2d 419, 420 (Tex. App.—Houston 1997, writ denied). A grant of summary judgment is proper if the movant has

2

established that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). When both parties move for summary judgment, as in this case, and the trial court grants one motion but denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). The reviewing court should render such judgment as the trial court should have rendered. *Id.* In reviewing the appeal, this Court will indulge all reasonable inferences and resolve all doubts in favor of the losing party. *University of Tex. Health Sci. Ctr. v. Big Train Carpet, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987).

## DISCUSSION

The general question before us is whether Anadarko is liable for the statutory interest for the late royalties Mesa paid under section 91.403 of the natural resources code, or whether it is liable for that interest pursuant to a contractual provision. *See* Tex. Nat. Res. Code Ann. § 91.403(a) (West 2001). Specifically, Clear Lake argues that Anadarko is the statutory "payor" as defined in section 91.401 and that Anadarko assumed the obligations of the "payor" through its lease with Clear Lake and through the "Permitted Encumbrances" section of its Asset Purchase Agreement with Edco. *See id*. § 91.401(a) (West 2001). Anadarko responds that it does not fit the definition of "payor" in section 91.401 and that none of its agreements provided for its assumption of the obligation to pay royalties or interest on minerals extracted prior to the transfer of the leasehold. *See id*.

3

In 1995, Edco and Anadarko entered into an Asset Purchase Agreement transferring the interest in the leasehold from Edco to Anadarko. The Agreement states that Anadarko acquired the lease free from defect, except for designated "permitted encumbrances." By agreement, these encumbrances include "[l]essors' royalties, overriding royalties, revisionary interests, and similar burdens . . . in any of the Properties as such interests are set forth on Exhibit 'B.'" They further include "all other contracts, agreements, instruments and obligations affecting the oil and gas leasehold estate." Exhibit "B" of the agreement describes a number of mineral wells. There was also a lease between Anadarko and Clear Lake providing that Anadarko would pay royalties on the oil and gas of the described properties after the closing date. We conclude that because the natural resources code did not obligate Anadarko to pay statutory interest, and because Anadarko did not agree to assume any such obligation from whomever was obligated under the statute, Anadarko is not liable for any of the statutory interest on the late-paid royalties.

**The Natural Resources Code on Payment for Proceeds of Sale**

Section 91.402 of the natural resources code provides the time frame in which the "payor" must pay proceeds from the sale of oil or gas production to the "payee." Tex. Nat. Res. Code Ann. § 91.402(a) (West 2001). It specifies the deadlines for payment of proceeds. *Id.* Section 91.403 requires the "payor" to pay interest to a payee if the payments for oil and gas produced are not made within specific time limits. *Id.* § 91.403(a). Section 91.404 provides the "payee" with a cause of action for nonpayment of the mineral proceeds or interest on those proceeds covered under the previous sections. *Id*. § 91.404(c) (West 2001). Section 91.401 defines "payor":

4

> The payor is the first purchaser of such production of oil or gas from an oil or gas well, unless the owner of the right to produce under an oil or gas lease or pooling order and the first purchaser have entered into arrangements providing that the proceeds derived from the sale of oil or gas are to be paid by the first purchaser to the owner of the right to produce who is thereby deemed to be the payor having the responsibility of paying those proceeds received from the first purchaser to the payee.

*Id.* § 91.401(a).

We must first determine, then, whether Anadarko was a "payor" under the code. The Agreement and the lease reflect that Anadarko was the "owner of the right to produce." There is nothing in the record to show that Anadarko was the "first purchaser" of the production of oil or gas. Anadarko describes Mesa as the "first purchaser." Clear Lake does not argue that Mesa was not the "first purchaser," and its pleadings describe Mesa as the "purchaser of condensate" of the well for which royalty payments were late. Thus, absent an "arrangement" between Mesa and Anadarko providing that Mesa pay Anadarko the proceeds, or absent a prior arrangement between Mesa and Edco providing that Mesa pay Edco the proceeds, Mesa was the "payor." There is no evidence in the record showing the existence of such an arrangement, and what evidence there is appears to contradict any claim that there was such an arrangement. As the first purchaser, Mesa was responsible for paying royalties to the payee unless the first purchaser and the owner of the right to produce had entered into some other "arrangement." *Id.* Clear Lake's pleadings, affidavits, responses to summary judgment motions, check stubs, and brief all describe Mesa as having been the party paying the royalties. Clear Lake's own evidence negates the proposition that there was an arrangement between Mesa and Edco or Mesa and Anadarko making Edco or Anadarko responsible for payments.

5

As the "first purchaser," therefore, Mesa was the "payor," and so was statutorily obligated to pay royalties by the expiration time set out in section 91.402 and, in the event of a late payment, the statutory interest required by section 91.403. *See id*. §§ 91.402(a), .403(a).

**Permitted Encumbrances of the Asset Purchase Agreement**

Under Texas law, an encumbrance is an interest in realty that diminishes its value and is a burden on its transfer. *City of Dayton v. Allred*, 68 S.W.2d 172, 178 (Tex. 1934); *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 521 (Tex. App.—Austin 1998, no pet.). Examples of encumbrances include liens, claims, easements, and servitudes. *Allred*, 68 S.W.2d at 178. In certain jurisdictions, there can be "encumbrances" on personal property as well. *See, e.g.*, *Hartford Fire Ins. Co. v. Jones*, 250 P. 248, 251 (Ariz. 1926); Black's Law Dictionary 908 (4th ed. 1968). In Texas, we find no case law extending the concept beyond its traditional scope, and Clear Lake cites none.

Under Texas law, unaccrued royalties on oil and gas are interests in realty. *Clyde v. Hamilton*, 414 S.W.2d 434, 438 (Tex. 1967). Accrued royalties, however, are interests in personal property. *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 371 (Tex. 2001) (quoting *Texas Oil & Gas Corp. v. Moore*, 630 S.W.2d 450, 452-53 (Tex. App.—Corpus Christi 1982, writ dism'd w.o.j.)). Oil and gas severed (extracted) from the land become personal property. *Phillips Petroleum Co. v. Mecom*, 375 S.W.2d 335, 339 (Tex. Civ. App.—Austin 1964, no writ); *Lone Star Gas Co. v. Murchison*, 353 S.W.2d 870, 879 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.). Royalties accrue, and therefore become interests in personal property, at the time the minerals are severed from the land. *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 363 (5th Cir. 1975); *Moore*, 630 S.W.2d at

452; *Sabine Prod. Co. v. Frost Nat. Bank*, 596 S.W.2d 271, 276 (Tex. App.—Corpus Christi 1980, writ dism'd). It follows then that royalties become interests in personalty at the time the minerals for which they are owed become personalty. *See Phillips*, 513 F.2d at 363; *Sabine*, 596 S.W.2d at 276.

The question, then, is whether Anadarko assumed any obligation to pay the statutory interest through the Asset Purchase Agreement with Edco. The initial answer is that it did not: Anadarko could not assume such an obligation from Edco unless Edco had that obligation, that is, unless Edco was the "payor." There was no evidence in the record showing that Edco was the "payor" because there was no evidence of a section 91.401 "arrangement" between Edco and Mesa, but there was sufficient evidence in the record to show that Mesa was the "payor." As the Agreement was between Anadarko and Edco, not Anadarko and Mesa, and as Edco had no obligation to pay the statutory interest that Anadarko could assume, Anadarko assumed no such obligation. However, if we accept for the sake of argument that there was an "arrangement" between Edco and Mesa making Edco the "payor," nothing in the Agreement required Anadarko to assume the statutory interest obligation.

**1. "Lessors' royalties"**

Clear Lake claims that Anadarko assumed the royalty payments and therefore the interest payments as a "permitted encumbrance" under the Agreement. The Agreement lists "[l]essors' royalties . . . in any of the Properties as such interests are set forth on Exhibit 'B'" as a permitted encumbrance. First, encumbrances are interests in realty in Texas. *Allred*, 68 S.W.2d at

7

178. Because the late-paid royalties were interests in personalty prior to the leasehold transfer—since the minerals for which they were owed were severed prior to the leasehold transfer of March 10, 1995—they are not an "encumbrance" in Texas, and thus Anadarko did not assume the obligation to pay them. Second, because the property interests in Exhibit "B" of the Agreement are all wells, not the severed minerals for which the late royalties were paid, Anadarko did not assume those royalty obligations, whatever the scope of "encumbrance." Anadarko only assumed the obligations to pay unaccrued royalties, that is, royalties that accrued after the closing date of the agreement. Thus, Anadarko could not have assumed the obligation to pay the statutory interest on the late royalties.

## 2. "Obligations affecting the oil and gas leasehold estate"

The Agreement also includes as permitted encumbrances "all other contracts, agreements, instruments and obligations affecting the oil and gas leasehold estate." Again, the royalties accrued prior to the leasehold transfer were not encumbrances on the leasehold and therefore did not "affect" it. Even so, since only royalties on the wells encumbered the leasehold, the royalties on the severed minerals could not "affect" the leasehold. *See Phillips*, 513 F.2d at 363. Thus, Anadarko did not assume the obligation to pay the statutory interest on such royalties.

**Anadarko's Lease**

In its summary judgment motion, Clear Lake argues that Anadarko assumed the statutory interest obligation through its lease with Anadarko, which provides that Anadarko is to pay royalties on the oil and gas. There is nothing in the lease providing that Anadarko assumes the

obligation to pay the interest on late-paid royalties by the "payor." Thus, the question is whether an agreement between the leaseholder of mineral wells and the owner stipulating that the leaseholder pay royalties is sufficient to make the leaseholder liable under section 91.403 for statutory interest on late royalty payments.

The statute obligates the statutorily-defined "payor" to pay royalties within a certain time and, in the event of late payment, to pay interest on those royalties. *Id*. §§ 91.401(a), .402(a), .403(a). It does not provide that anyone who agrees to pay royalties who is not otherwise the statutory "payor" thereby incurs liability for the statutory interest upon late payment. Liability for interest does not arise when a party liable for mineral royalties fails to make payments, but only when the statutory "payor" fails to make payment. *See id.* It does not follow from the fact that Anadarko entered into an agreement with the well owner to assume liability for failed or late royalty payments that it became liable for the statutory interest. The language of the statute does not place the obligation to pay the interest on Anadarko by virtue of its assumption of the obligation to pay royalties alone unless, as discussed, it is the "first purchaser," or made an "arrangement" with the first purchaser. The only arrangement the lease represents is one with the lessor, Clear Lake, not the first purchaser, Mesa. Anadarko could have agreed to assume the obligation of paying the statutory interest as well, but it did not do so in the lease with Clear Lake.

Even under a reading of the statute that finds assuming the obligation to pay royalties sufficient for someone to be designated the statutory "payor" and therefore obligated to pay the statutory interest, Anadarko still did not assume the obligation to pay the royalties owed on severed minerals, but only on the oil and gas of the properties described in the lease. Under the lease,

9

Anadarko assumed only the obligation to pay royalties due on production occurring after the closing date. Thus, under an alternative reading of the statute, Anadarko could be the "payor" only of unaccrued royalties, not the accrued royalties for which statutory interest is sought in this suit.

## CONCLUSION

Because Anadarko was not obligated by the Texas Natural Resources Code to pay the statutory interest on Mesa's late-paid royalties, and because it did not assume such obligation under either its lease agreement or the Asset Purchase Agreement, we reverse the district court's order granting summary judgment in favor of Clear Lake and denying Anadarko's summary judgment motion. We sustain Anadarko's issues, grant its summary judgment motion, and render a take-nothing judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Rendered

Filed: July 7, 2005

10